Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
Kyle G. Bates (SBN 299114)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
kbates@schneiderwallace.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES KNAPP, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ART.COM, INC., a California Corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 3:16-cv-00768-WHO<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARD** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL BACKGROUND ...................................................................... 2

III. THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF TO THE CLASS ........ 2

    A. Prospective Changes Benefiting the Class ................................................ 2

    B. Monetary Relief Benefiting the Nationwide Class ................................... 3

IV. ARGUMENT ...................................................................................................... 4

    A. This is Not a Coupon Settlement within the Meaning of CAFA .................. 4

        1. Because the attorney fee request is based on the lodestar method, whether the Vouchers are deemed to be coupons is irrelevant .................... 4

        2. The Primary Characteristic of a Coupon Does Not Apply to the Vouchers ............ 5

        3. The secondary characteristics of coupons do not apply to the Vouchers ................ 9

    B. Class Counsel are Entitled to Attorneys' Fees ......................................... 10

    C. The Requested Fee Award is Fair, Reasonable, and Justified .................... 11

        1. The Requested Fee is Presumptively Reasonable Because it Resulted From Arm's Length Negotiations ................ 11

        2. Class Counsel's Fees are Reasonable under the Lodestar Calculation Method ...... 12

    D. The Efforts Expended by Class Counsel Are Reasonable ......................... 12

    E. Class Counsel's Hourly Rates are Reasonable ........................................ 15

    F. The Court Should Apply a Modest Multiplier ......................................... 16

        1. Risk Presented by Contingent Nature of Recovery ................................ 17

        2. The Result Obtained ................................................................... 19

        3. Difficulty of Questions Involved and Skill Required .............................. 20

        4. The Extent to Which Litigation Precluded Other Employment .................. 20

    G. The Percentage of the Fund Cross-Check Supports the Reasonableness of the Fee Request ............ 20

    H. Litigation Costs ...................................................................................... 21

    I. The Class Representative Service Award is Reasonable ............................ 21

V. CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

Federal **Cases**

*Been v. O.K. Industries, Inc.*
 No. CIV-02-285, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011)...............................17

*Blanchard v. Bergeron*
 489 U.S. 87 (1989) ....................................................................................................15

*Blum v. Stenson*
 465 U.S. 886 (1984) ..................................................................................................15

*Browning v. Yahoo! Inc.*
 No. C04-01463, 2007 WL 4105971 (N.D. Cal. Feb, 14, 2014) ...................................8

*Bush v. Cheaptickets, Inc.*
 425 F.3d 683 (9th Cir. 2005) ....................................................................................10

*Campbell v. Nat'l Passenger R.R. Corp.*
 718 F. Supp. 2d 1093 (N.D. Cal. 2010).....................................................................16

*Chalmers v. City of Los Angeles*
 796 F.2d 1205 (9th Cir. 1986) ..................................................................................12

*Children's Hosp. and Med. Ctr. v. Bonta*
 97 Cal. App. 4th 740, 118 Cal. Rptr. 2d 629 (2002) .................................................15

*Craft v. County of San Bernardino*
 624 F. Supp. 2d 1113 (C.D. Cal. 2008).....................................................................17

*Farrar v. Hobby*
 506 U.S. 103 (1992) ..................................................................................................10

*Fernandez v. Victoria Secret Stores, LLC*
 No. CV 06–04149, 2008 WL 8150856, (C.D. Cal. Jul. 21, 2008).................................8

*Fischel v. Equitable Life Assur. Soc'y of the United States*
 307 F.3d 997 (9th Cir. 2002) ....................................................................................12

*Foos v. Ann, Inc.*
 No. 11cv2794, 2013 WL 5352969 (S.D. Cal. Sept. 24, 2013).......................................8

*Gonzalez v. City of Maywood*
    729 F.3d 1196 (9th Cir. 2013) ................................................................ 15

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ...................................................... 1, 11, 20

*Hendricks v. Starkist Co., et al.*
    No. 13-cv-00729, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ................. 8

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ...................................................... 11, 15, 19

*Hopson v. Hanesbrands Inc.*
    No. CV-08-0844 EDL, 2009 WL 928133, (N.D. Cal. Apr. 3, 2009).......................... 22

*In re Alexia Foods, Inc. Litig.*
    No. 12-cv-01546 (N.D. Cal. Dec. 12, 2013) ...................................... 8

*In re Apple Computer, Inc. Derivative Litig.*
    No. C 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .................................... 11

*In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*
    MDL No. 1967, Master Case No. 08–1967, 2011 WL 1790603 (W.D. Mo. 2011) ....... 8

*In re HP Power Plug and Graphic Card Litig.*
    No. C-06-02254, 2008 WL 2697192 (N.D. Cal. July 7, 2008)............................. 5, 7, 9

*In re Media Vision Tech. Sec. Litig.*
    913 F.Supp. 1362 (N.D. Cal. 1996).......................................................... 21

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ........................................................ 19, 20

*In re Omnivision Technologies, Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................ 18, 20

*In re Online DVD-Rental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015) ...................................................passim

*In re TCT-LCD (Flat Panel) Antitrust Litig.*
    No, MDL 3:07-MD-1872, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) .................. 17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ................................................ 18

*In re: Easysaver Rewards Litigation*
No. 09-cv-02094, 2016 WL 4191048 (S.D. Cal. Aug. 9, 2016) ........................ 9, 10, 16

*In re Wash. Public Power Supply Sys.*
19 F.3d 1291 (9th Cir. 1994) .................................................................... 15

*Johnson v. Ashley Furniture Industries, Inc.*
(S.D. Cal.) 13-cv-2445-BTM (DHB) ............................................................ 9

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975) ..................................................................... 12

*Mangold v. Calif. Public Utilities Comm'n*
67 F.3d 1470 (9th Cir. 1995) .................................................................... 10

*Manner v. Gucci America, Inc.*
No. 15-cv-00045, 2016 WL 6033545 (S.D. Cal. Oct. 13, 2016) ........................ 8

*Parkinson v. Hyundai Motor America*
796 F. Supp. 2d 1160 (C.D. Cal. 2010) ...................................................... 17

*Perdue v. Kenny A.*
559 U.S. 542 (2010) ............................................................................. 12

*Perez v. Asurion Corp.*
No. 06-20734, 2007 WL 2591180 (S.D. Fla. Aug. 8, 2007) ............................. 5

*Petersen v. Lowe's HIW, Inc.*
Nos. C 11–01996 RS, C 11–03231 RS, C 11–02193 RS (N.D. Cal. Aug. 24, 2012)..... 8

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa.2011)........................... 8

*Rodriguez v. West Publishing Corp.*
563 F.3d 948 (9th Cir. 2009) ................................................................... 21

*Saravia v. Dynamex Operations West, LLC*
Case No. 3:14-cv-05003-WHA (N.D. Cal.) .................................................. 16

*Schwarz v. Sec. of Health & Human Servs.*
73 F.3d 895 (9th Cir. 1995) ..................................................................... 15

*Seebrook v The Childrens' Place Retail Stores Inc.*
No. C 11-837, 2013 WL 6326487 (N.D. Cal. Dec. 4, 2013) .......................... 8, 10

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir 2003) ............................................................. 11, 19, 21

-4-

MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND CLASS
REPRESENTATIVE SERVICE AWARD; CASE NO. 3:16-CV-00768-WHO

*Steiner v. Am. Broad. Co.*
     248 Fed. Appx. 780 (9th Cir. Cal. 2007)...................................................................... 17

*Van Vranken v. Atlantic Richfield Co.*
     901 F. Supp. 294 (N.D. Cal. 1995)............................................................................. 22

*Vizcaino v. Microsoft Corp.*
     290 F.3d 1043 (9th Cir. 2002) .......................................................................... passim

*Widrig v. Apfel*
     140 F. 3d 1207 (9th Cir. 1998) ................................................................................. 16

**California Cases**

*Ketchum v. Moses*
     24 Cal.4th 1122, 17 P.3d 735 (2001)........................................................................ 15

*Kwikset Corp. v. Superior Court*
     51 Cal.4th 310, 246 P.3d 877 (Cal. 2011) .................................................................. 5

*Robertson v. Fleetwood Travel Trailers*
     144 Cal. App. 4th 785, 50 Cal. Rptr. 3d 731 (2006) ............................................. 15

*Serrano v. Priest*
     20 Cal. 3d 25, 569 P.2d 1303 (1977).......................................................................... 10

**Rules**

California Business and Professionals Code Section 17501 ............................................ 13

California Civil Code Section 1747.08 ............................................................................. 10

California Civil Code Section 1780(e) .............................................................................. 10

California Code of Civil Procedure Section 1021 ............................................................. 10

California Code of Civil Procedure Section 1021.5 .......................................................... 10

1    I.    **INTRODUCTION**

2           Plaintiff respectfully submits this application for an award of attorneys' fees and costs to Class

3    Counsel totaling $745,000 to compensate them for their work in achieving a substantial Settlement–

4    including both monetary and injunctive relief–on behalf of a nationwide class of two million consumers

5    who were allegedly deceived into purchasing products from Defendant Art.com, Inc. ("Art.com") based

6    on perpetual sales. This represents a reasonable attorney fee to Class Counsel calculated according to the

7    lodestar method and reimbursement for actual litigation costs. Plaintiff also requests a service award of

8    $5,000.

9           After conducting a thorough pre-filing investigation, defeating a motion to dismiss, taking

10   efficient but comprehensive discovery, and filing a motion for class certification, Class Counsel was able

11   to reach this Settlement, which provides for the distribution of $10 Vouchers, without the need for Class

12   members to submit a claim form, to a Class comprised of approximately two million people. As

13   explained in detail below, the $10 Voucher represents a significant recovery for each Class member and

14   is not a "coupon" settlement. Of equal importance, the settlement requires Art.com to implement

15   substantial changes to its advertising and pricing practices.

16          Plaintiff respectfully moves the Court for an award of attorneys' fees of $683,758 based on a

17   lodestar analysis. The fee request is supported by a lodestar plus multiplier cross-check. *See Hanlon v.*

18   *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (district courts can utilize lodestar or percentage of

19   fund method in granting fee requests in class actions). Class Counsel's time multiplied by reasonable

20   hourly rates of the specific personnel involved amounts to $520,214 in lodestar fees. Thus, the fee

21   amount requested by Class Counsel would result in a modest multiplier of slightly more than 1.3. This

22   amount is also reasonable based on a percentage of the common fund theory. In common fund cases, the

23   Ninth Circuit Court of Appeals' benchmark for attorneys' fees is 25% of the fund created for the benefit

24   of the Class, plus recovery of costs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir.

25   2002). Here, Class Counsel's fee request represents around 3.5% of the monetary component of the

26   Settlement. Finally, courts in the Ninth Circuit frequently grant service awards of $5,000–the amount

27   requested by Plaintiff–in class actions such as this one. In sum, Plaintiff's attorney fee and service award

28

1   requests are well-within the range commonly awarded in comparable cases and Plaintiff requests that the

2   Court grant this motion.

3   **II.      PROCEDURAL BACKGROUND**

4          A more detailed summary of the procedural background of this case leading up to the Settlement

5   is set forth in Plaintiff's motion for preliminary approval. *See* ECF No. 52. In summary, Plaintiff filed his

6   Complaint on February 16, 2016, ECF No. 1, and the operative First Amended Complaint on March 23,

7   2016, ECF No. 6. On May 2, 2016, Art.com filed a motion to dismiss the Amended Complaint. ECF No.

8   19. Plaintiff opposed this motion, and on June 15, 2016, the Court issued an order largely denying the

9   motion. ECF No. 31. On October 14, 2016, Plaintiff filed a motion for class certification. ECF No. 41.

10  On November 4, 2016, Art.com filed a motion for summary judgment. ECF No. 47.

11         On November 10, 2016, the parties participated in mediation with David Rotman. At the

12  conclusion of the day-long mediation, the parties reached an agreement regarding the material terms of

13  this Settlement. Pursuant to that agreement, Plaintiff agreed to seek approval of an award of attorneys'

14  fees and costs of $745,000 and to seek a service award to Plaintiff of $5,000.

15         Plaintiff filed a motion for preliminary approval of the Settlement including those terms. ECF No.

16  52. The Court preliminarily approved the Settlement by Order dated April 25, 2017, ECF No. 57, which

17  was subsequently amended on May 18, 2017, ECF No. 61.

18  **III.     THE SETTLEMENT PROVIDES SUBSTANTIAL RELIEF TO THE CLASS**

19         The Settlement achieved by Plaintiff and Class Counsel provides both meaningful injunctive

20  relief and significant monetary benefit to the Class.

21         **A.      Prospective Changes Benefiting the Class**

22         The alleged unlawful conduct driving this litigation was Plaintiff's allegation that Art.com

23  deceived consumers into making purchases through its e-commerce websites by advertising sales that

24  were not bona fide because the products were never sold at the advertised discount price. Thus, one of the

25  primary goals of this litigation was to require Art.com to cease this conduct. This Settlement achieves

26  that goal. Should the Court grant final approval of the Settlement, Art.com has agreed that any regular

27  price to which Art.com refers in any advertising will be the actual, bona fide price at which the item was

28

openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of business, honestly and in good faith. Settlement Agreement, ¶ 5.1.[1] Furthermore, Art.com has agreed to implement a compliance program, which will consist of periodic (no less than once a year) monitoring, training and auditing to ensure compliance with relevant laws, for a period of at least four (4) years from the Effective Date of the Settlement. *Id.*

### B.   Monetary Relief Benefiting the Nationwide Class

Based on the Class size of about two million consumers, the total monetary value of the Vouchers is approximately $20 million. Not only does the monetary component of the Settlement represent a substantial recovery for the Class as a whole, but it also provides each individual Class member with real value. Each Class member that does not opt-out of the Settlement will automatically receive a $10 Voucher. Class members do not need to make any claim in order to receive the benefit. Other features of the Vouchers are explained below.

Moreover, prior to reaching this Settlement, Plaintiff learned that the average purchase price for un-serviced (i.e., non-framed) product from Art.com during the relevant time period was $17 and the average Class member made 1.4 purchases during the Class period. Therefore, the average Class member spent approximately $23.80. The $10 Vouchers represent a recovery of 42% of the value of each Class member's purchase. This is an excellent result, particularly in light of Plaintiff's theory of the case, which was that Class members were harmed due to deceptive sales, not that Class members received a defective product.

---

[1] The Settlement Agreement was submitted in connection with Plaintiff's motion for preliminary approval, ECF No. 53-1, and is incorporated herein by reference.

## IV.    ARGUMENT

### A.    This is Not a Coupon Settlement within the Meaning of CAFA

#### 1.    Because the attorney fee request is based on the lodestar method, whether the Vouchers are deemed to be coupons is irrelevant

The Class Action Fairness Act ("CAFA") imposes certain limitations on "coupon" settlements and awards for attorneys' fees arising from such settlements. The relevant parts of the CAFA state that "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is *attributable to the award of the coupons* shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a) (emphasis added). If, however, "a proposed settlement in a class action provides for a recovery of coupons to class members, and a *portion of the recovery of the coupons is not used* to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1) (emphasis added). In such a case, CAFA dos not "prohibit application of a lodestar with a multiplier method of determining attorney's fees." 28 U.S.C. § 1712(b)(2). Finally, where a settlement includes both coupons and injunctive relief, "that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a)" and "that portion of the attorneys' fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b)." 28 U.S.C. § 1712(c).

Here, the face value of the coupons is not used to calculate Plaintiff's attorneys' fees (except as a cross-check as set forth below). In other words, no part of Plaintiff's fee request is "attributable to the award of coupons." 28 U.S.C. § 1712(a). Rather, Plaintiff's fees are based on the lodestar method with a modest multiplier of 1.3. Thus, even if the Vouchers are deemed to be coupons (and they should not be, as explained below), 28 U.S.C. § 1712(a) is not applicable to Plaintiff's fee request. Rather, 28 U.S.C. 1712(b) or (c) govern.

This is even clearer when the injunctive relief obtained by Plaintiff is taken into account. As the California Supreme Court has stated, injunctions are "'the primary form of relief available under the UCL

to protect consumers from unfair business practices," while restitution is a type of "ancillary relief." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 337, 246 P.3d 877, 895 (Cal. 2011) (internal quotation omitted). Had Plaintiff *only* obtained injunctive relief, his entitlement to attorneys' fees would be calculated according to the lodestar method and the current fee request would be justified according to that method. It would be wholly illogical for the fact that Plaintiff *also* obtained monetary relief in the form of "coupons" to reduce his entitlement to attorneys' fees based on 28 U.S.C. § 1712(a). *See In re HP Power Plug and Graphic Card Litig.*, No. C-06-02254, 2008 WL 2697192, *2 (N.D. Cal. July 7, 2008) ("The court agrees that the main value of the settlement is the provision of a repair option, not the provision of a coupon and finds using a lodestar with a multiplier method to be appropriate for determining attorney's fees for plaintiffs' counsel in this case."); *Perez v. Asurion Corp.*, No. 06-20734, 2007 WL 2591180,*2 (S.D. Fla. Aug. 8, 2007) (calculating attorneys' fees by the lodestar method where the settlement involved "calling cards" that were arguably coupons under CAFA, which was especially appropriate because the case was brought under consumer protection statutes for which "[a]ttorneys' fees are typically provided … regardless of the eventual monetary results, due in part to the importance that the cases serve in our society and to provide the incentive necessary to have lawyers agree to undertake them").

## 2.   The Primary Characteristic of a Coupon Does Not Apply to the Vouchers

Even if determining whether the Vouchers are coupons within the meaning of the CAFA were relevant, this is not a coupon settlement because the Vouchers in this case constitute substantial value to each Class member. Art.com offers approximately 100,000 items in several diverse categories – such as posters, novelty items, and photography – for $10 or less including shipping and sales tax. Takemoto Decl., ¶ 5.[2] Class members will therefore be able to use the Voucher towards a large selection of items without spending any additional money. There are no black-out dates or any other restrictions on how

---

[2] The Declaration of Gary Takemoto, Art.com's Senior Vice President of Merchandising, was submitted in connection with Plaintiff's motion for preliminary approval, ECF No. 52, and is incorporated herein by reference.

Class members can utilize their Vouchers towards getting a free product from Art.com.[3] Indeed, Class Counsel negotiated this Settlement to ensure that the Vouchers afford real monetary benefit to Class members.

The leading case on this issue is *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015). There, Walmart agreed to pay a total amount of $27,250,000, composed of a cash component (which funded attorneys' fees and settlement administration costs) and a $12 gift card component (which went to the class members, if they submitted a claim form, to redeem goods from Walmart stores). *Id.* at 940. The Ninth Circuit observed that the term "coupon" is not defined in 28 U.S.C. § 1711.[4] While the Ninth Circuit did not go on to explicitly define a coupon, it recognized that the primary factor that distinguishes a coupon is the lack of any cash value: "[t]o the extent [the gift cards] have cash value, it is because they are equal to a certain dollar amount and can be spent on a variety of useful goods." *Id.* at 956, n. 9.

The Ninth Circuit held the $12 gift card was not a coupon primarily because class members could use it to redeem different products without spending additional money. *Id.* at 951. Because the gift cards were not coupons within the meaning of CAFA, the district court properly calculated attorneys' fees under the percentage of the fund method (although it had discretion to apply the lodestar method), valuing the unredeemed gift cards at 100 cents on the dollar. *Id.* at 953.

In reaching this conclusion, the Ninth Circuit analyzed the legislative purpose of CAFA, reasoning that:

> Congress emphasized its concern about settlements when class members receive little or no value, including settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4 (2005). The Senate Judiciary Committee's Report offers more detail, stating that congressional hearings have exposed class action settlements in which "class members receive nothing more than promotional coupons to purchase more products from the defendants. S.Rep. No. 109–14, at 15 (2005), 2005 U.S.C.C.A.N. 3, 16."

---

[3] However, if they so choose, Class members can also use the Voucher for $10 off any higher priced items sold by Art.com.

[4] One definition of the word "coupon" in the Oxford English dictionary is: "a voucher entitling the holder to a discount off a particular product."

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950. The Ninth Circuit then cited examples from the Senate Judiciary Report, including coupons that provide: "$30 to $40 discounts" on a future cruise, "a $5 to $10 voucher good for future purchases of particular computer hardware or software products," "$1 off every subsequent $5 purchase" at a chain of restaurants, "a 30 percent discount on selected products" during a one-week time period, "$1.25 off a $25 dollar [video] game," and so forth. *Id*. The Ninth Circuit distinguished the $12 gift cards from these examples, concluding that they were not coupons because the discounts referenced in the Senate Judiciary Report:

> [r]equire class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services. The gift cards in this case are different. Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his or her own money and can choose from a large number of potential items to purchase. Even if the gift card is only worth $12, it gives class members considerably more flexibility than any of the coupon settlements listed in the Senate report.

*Id.* at 949-51.

The Ninth Circuit further observed, "[p]art of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products. That distinction also separates these gift cards from the e-credits we deemed coupons in *In re HP Inkjet Printer Litig.*, 716 F.3d [1173] at 1176 [9th Cir. 2013)] (deeming e-credits, which could only be used to obtain Hewlett–Packard printers and printer supplies, to be coupons). *Id.* at 952.

The Vouchers in this case possess the dispositive characteristic identified in *In re Online DVD*: they provide Class members with the ability to choose from thousands of products from Art.com without spending any of their own money to redeem the Voucher. Conversely, the Vouchers in this case are entirely distinguishable from the types of coupon settlements referenced in the Senate Report – all of which were negligible discounts off products, thus requiring class members to spend their own money to obtain the benefit of the coupon.

Numerous district court opinions–both before and after *In re Online DVD-Rental Antitrust Litig.*– further support Plaintiff's argument. Pre-*In re Online DVD-Rental Antitrust Litig.* cases include: *In re Alexia Foods, Inc. Litig.*, No. 12-cv-01546 (N.D. Cal. Dec. 12, 2013) (valued product vouchers at 100 cents on the dollar when making a percentage-of-the-benefit fee award); *Seebrook v The Childrens' Place Retail Stores Inc.*, No. C 11-837, 2013 WL 6326487 (N.D. Cal. Dec. 4, 2013) (distinction between a coupon and a voucher was that a coupon is a discount on merchandise or services offered by the defendant and a voucher provides for free merchandise or services); *Browning v. Yahoo! Inc.*, No. C04-01463, 2007 WL 4105971 (N.D. Cal. Feb, 14, 2014) (concluding that in-kind relief was not a coupon because it "does not require class members to spend money in order to realize the settlement benefit."); *Foos v. Ann, Inc.*, No. 11cv2794, 2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ("The distinction between a coupon and a voucher is that a coupon is a discount on merchandise or services offered by the defendant and a voucher provides for free merchandise or services.").[5]

Following *In re Online DVD-Rental Antitrust Litig.*, district courts presented with similar coupon/voucher settlements have reached the same conclusion. *See, e.g., Hendricks v. Starkist Co., et al.*, No. 13-cv-00729, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ("Unlike coupons, the vouchers do not provide a small discount that requires "class members to hand over more of their own money before they can take advantage of the coupon."); *Manner v. Gucci America, Inc.*, No. 15-cv-00045, 2016 WL 6033545 (S.D. Cal. Oct. 13, 2016) (free gift ranging between $40-$120 not a coupon because they do not 'require class members to hand over more of their own money before they can take advantage of the

---

[5] The *In re Online DVD-Rental Antitrust Litig.* opinion also expressly considered the following cases: *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 255–56 (E.D. Pa.2011) ($20 Rite Aid gift cards with "actual cash value" are "more like 'cash' than 'coupons'"); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149, 2008 WL 8150856, at *2, *4–16 (C.D. Cal. Jul. 21, 2008) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with gift cards to Victoria's Secret); *Petersen v. Lowe's HIW, Inc.*, Nos. C 11–01996 RS, C 11–03231 RS, C 11–02193 RS (N.D. Cal. Aug. 24, 2012) (approving a settlement and attorneys' fees award, outside the strictures of CAFA, that provides class members with $9 gift cards to Lowe's); *In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, Master Case No. 08–1967, 2011 WL 1790603 (W.D. Mo. 2011) (settlement that provides class members with vouchers to obtain new products was not a coupon settlement because they do not require class members to spend their own money or to purchase the same or similar products as those that gave rise to the litigation).

[gift].'"); *Johnson v. Ashley Furniture Industries, Inc.* (S.D. Cal.) 13-cv-2445-BTM (DHB) (analyzing attorneys' fee request under lodestar method based on finding that $25 voucher not a coupon on record that "there are over two thousands items under $25").

*In re: Easysaver Rewards Litigation*, No. 09-cv-02094, 2016 WL 4191048 (S.D. Cal. Aug. 9, 2016) is especially relevant here. In that case, the district court held that the $20 vouchers were not coupons because they enabled class members "to purchase any number of products from several different websites, many of which do not require the class member to spend any of his own money. They are not discount coupons; they are $20.00 that can be used for or toward the purchase of any on-line item. The merchandise credits are not limited to purchase of a specific item or set of items." 2016 WL 4191048, *3.

The foregoing authorities demonstrate that the dispositive trait of a gift card/voucher in the Ninth Circuit is that it enables class members to receive a free product based on a meaningful selection offered by the defendant. That trait applies to the Vouchers in this case. Moreover, the alleged unlawful conduct in this case (i.e., the false, perpetual sales) has no bearing on the value of Art.com's products or the enjoyment that class members derive from the products.

3.   The secondary characteristics of coupons do not apply to the Vouchers

The Ninth Circuit has identified other secondary traits that define a coupon under CAFA. These characteristics include: the inability to transfer the coupon, an expiration date, and limitations on when the coupon used. *See In re HP Inkjet Printer Litig.*, 716 F.3d at 1176 (describing "e-credits," that expired six months after issuance, were non-transferable, and could not be used with other discounts or coupons, as a "euphemism for coupons").

The Vouchers in this case possess most of the secondary characteristics that distinguish them from coupons, in that they can be used multiple times until the balance of the Voucher is extinguished, they are freely transferrable (i.e., they may be transferred to other persons, including other Class members or non-Class members), and they can be used on sale and/or promotional items and can be used for shipping and tax in an amount not to exceed the Voucher amount. Settlement Agreement, ¶3.19. The only characteristic of a coupon applicable to the Vouchers of which Plaintiff is aware is the fact that there is an expiration date. The Vouchers possess an 18-month expiration date. *Id*. This provides Class

members with a long period of time to redeem the Voucher. The purpose of an expiration date was not to limit or reduce the redemption rate; rather, it was for logistical purposes in administering the Settlement. Furthermore, the existence of an expiration date is not dispositive: courts have held that vouchers with expiration dates are not necessarily coupons. *See*, *e.g.*, *In re: Easysaver Rewards Litigation*, 2016 WL 4191048, at * 3 (voucher not a coupon even though it had a one-year expiration date and there were blackout dates for when the voucher could be redeemed).

### B.    Class Counsel are Entitled to Attorneys' Fees

In diversity actions, federal courts must apply state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *See Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). Class actions removed under CAFA are diversity actions. *See Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (CAFA "broadens diversity jurisdiction for certain qualifying class actions and authorizes their removal . . . ."). California law also governs the attorneys' fee award here because Plaintiff's claims arise under California law. *See Vizcaino*, 290 F.3d at 1047.

Plaintiff is entitled to an award of reasonable attorneys' fees and costs under Cal. Civ. Code § 1780(e) and Cal. Code of Civ. Proc. § 1021.5 as prevailing parties.[6] A plaintiff who obtains a successful settlement, such as the one presented here, is a prevailing party. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Furthermore, under California law, the court is empowered to award reasonable attorneys' fees and costs when a litigant proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons. *See Serrano v. Priest*, 20 Cal. 3d 25, 38, 569 P.2d 1303, 1314-15 (1977) ("*Serrano III*").

In the Ninth Circuit, there are two primary methods to calculate attorney's fees: the lodestar method and the percentage-of-recovery method. *See In re Online DVD-Rental Antitrust Litig.*, 716 F.3d at 949. While the trial court has discretion, one recognized approach is to determine the plaintiff's

---

[6] *See Seebrook*, 2013 WL 6326487, *2 (awarding attorneys' fees under Cal. Code of Civ. Proc. § 1021 in class action asserting a claim under Cal. Civ. Code § 1747.08).

lodestar fees, determine whether a multiplier is warranted, and then "cross check" the propriety of that amount as a percentage of the overall recovery. *See Hanlon*, 150 F.3d at 1029.

### C.   The Requested Fee Award is Fair, Reasonable, and Justified

Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir 2003) (quoting Fed. R. Civ. P. 23(e)). When the Court analyzes the time and effort expended by Class Counsel, the contingent risk in litigating this case, and the result this settlement provides to the Class, it is clear that this standard is met.

### 1.   The Requested Fee is Presumptively Reasonable Because it Resulted From Arm's Length Negotiations

Courts have encouraged litigants to resolve fee issues by arms-length negotiation. *See Hanlon*, 150 F.3d at 1029. As the United States Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify that the requested fees are reasonable and not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations involving a mediator after the parties agreed on the other key deal terms. *See, e.g., In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128, 2008 WL 4820784, * 3 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement).

Here, Class Counsel negotiated with Art.com to reach an agreed-upon fee amount that they regarded as reasonable based on the benefits achieved for the Class and applicable legal principles, and did so only after they reached agreement on the other key deal terms – namely, the classwide injunctive and monetary relief. Kim Decl. ¶ 10. Further, the fee amount, like the settlement itself, was agreed upon under the auspices and with the assistance of David Rotman, an experienced, well-respected mediator. *Id.* ¶ 11. That fact serves as "independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon*, 150 F.3d at 1029. Under these circumstances, the Court

1    should give weight to the judgment of the parties, their counsel, and the mediator regarding reasonable

2    fees.

3                              2.    Class Counsel's Fees are Reasonable under the Lodestar Calculation
                                     Method

4

5           As set forth above, Plaintiff moves for an award of attorneys' fees and costs based on their

6    lodestar, with a modest multiplier. As affirmed by the Supreme Court: "The 'lodestar' figure has, as its

7    name suggests, become the guiding light of our fee-shifting jurisprudence." *Perdue v. Kenny A.*, 559 U.S.

8    542, 504 (2010). "There is a strong presumption that the lodestar figure represents a reasonable fee."

9    *Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1007 (9th Cir. 2002) (internal

10   quotation omitted).

11          "The lodestar method requires multiplying the number of hours the prevailing party reasonably

12   expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the

13   region and for the experience of the lawyer." *In re Online DVD-Rental Antitrust Litig.*, 716 F.3d at 949

14   (internal quotation omitted). A reasonable hourly rate is the prevailing rate charged by attorneys of

15   similar skill and experience in the relevant community. *See Chalmers v. City of Los Angeles*, 796 F.2d

16   1205, 1210 (9th Cir. 1986). Once this raw lodestar figure is determined, the court may then adjust that

17   figure based upon its consideration of many of the same "enhancement" factors considered in the

18   percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether the fee is fixed or

19   contingent; (3) the complexity of the issues involved; (4) the preclusion of other employment due to

20   acceptance of the case; and (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen

21   Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

22          **D.    The Efforts Expended by Class Counsel Are Reasonable**

23          The accompanying declarations of Class Counsel set forth the hours of work and billing rates

24   used to calculate their lodestar. As described in those declarations, Class Counsel has devoted a total of

25   over 850 hours to this litigation, and have a total lodestar to date of approximately $ 520,000. These

26   amounts do not include the additional time that Class Counsel will spend seeking approval of, and

27   implementing, the Settlement, including assisting Class members with claims and overseeing settlement

28

administration generally. Kim Decl. ¶ 16; Declaration of Aubry Wand ("Wand Decl."), ¶ 13. Judging by previous experience, these responsibilities will require substantial numbers of hours of work by Class Counsel over the coming months, which may in fact substantially diminish any enhancement when these additional hours are considered. Kim Decl. ¶ 16.

All of the time that Class Counsel devoted to litigating this case was reasonable and served to directly benefit the Class. Class Counsel conducted an extensive investigation before commencing this action. Specifically, Class Counsel monitored Art.com's website every day for a period of several months to confirm the theory that Art.com continuously advertised site-wide sales. Kim Decl. ¶ 18. Class Counsel also conducted substantial research into theories of perpetual sales in the context of violations of California consumer protection laws such as the False Advertising Law and Consumer Legal Remedies Act. After this investigation, Class Counsel filed the complaint on February 16, 2016. *Id.*

The drafting process of the complaint was time-consuming, but the filing of a detailed and comprehensive complaint was, in Class Counsel's opinion, critical to surviving the motion to dismiss filed by Art.com. Class Counsel expended significant time and energy conducting legal research in opposing the arguments advanced by Art.com – primarily, that Plaintiff had failed to state a claim under Cal. Bus. & Prof. Code § 17501. These efforts proved worthwhile, as the Court largely denied Art.com's motion to dismiss. *See* ECF No. 31.

Thereafter, the parties conducted extensive discovery into the merits of Plaintiff's claims and class certification issues. Plaintiff sat for deposition on July 14, 2016. The parties exchanged thousands of pages of documents, including sales data, Art.com's internal documents concerning its advertising, pricing, and promotional practices, and actual advertisements disseminated to consumers. Kim Decl. ¶ 20. Plaintiff's discovery was highly focused on developing a sufficient factual record to enable Plaintiff to prevail at class certification (while at the same time avoiding extraneous and duplicative work). *Id.* To that end, Plaintiff served tailored discovery and agreed to further narrow the scope of certain discovery requests after comprehensive meet and confer efforts with opposing counsel. *Id.* After reviewing and analyzing this documentary evidence, Class Counsel took the deposition of Art.com's Rule 30(b)(6) designee on August 24, 2016 relating to Art.com's sales and advertising practices. *Id.* The testimony

1   elicited from the witness was crucial in establishing the existence of systemic policies and practices that

2   showed that Art.com had engaged in classwide sales practices. *Id.*

3          Plaintiff also retained and engaged in numerous conversations and meetings with two highly

4   qualified experts in the fields of marketing and accounting. These experts ultimately submitted reports in

5   support of Plaintiff's motion for class certification. Kim Decl. ¶ 21. On October 14, 2016, Plaintiff filed a

6   motion for class certification. *Id*. In support, Plaintiff relied on interrogatory responses obtained from

7   Art.com, deposition testimony from Plaintiff and Art.com's Rule 30(b)(6) designee, expert reports, and

8   documents showing Art.com's promotional sales history and the actual advertised sales on its e-

9   commerce websites during the Class period. *Id*. Preparing the motion for class certification was a

10  formidable task that demanded the coordinated efforts of Class Counsel. *Id.* It encompassed an array of

11  work tasks, including legal research, review of numerous documents, and a multi-step drafting process.

12  *Id.*

13         In considering reasonable hours, "[b]y and large, the court should defer to the winning lawyer's

14  professional judgment as to how much time he was required to spend on the case; after all, he won, and

15  might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

16  Cir. 2008). A breakdown of the hours worked and corresponding lodestars on a timekeeper by timekeeper

17  basis is presented in Exhibits "1" & "2" to the Kim Declaration and Exhibit "A" to the Wand

18  Declaration.

19         The time Class Counsel devoted to prosecuting this case was necessary. Class counsel deftly

20  balanced the vigorous litigation of this case with the benefits of minimizing unnecessary work and

21  cooperating with Art.com–all with the goal of achieving the best possible result for the Class. Class

22  Counsel did not undertake any extraneous work that would primarily serve to increase Class Counsel's

23  lodestar. Moreover, Class Counsel worked closely and in cooperation with one another to divide tasks,

24  insure efficient case management, and prevent duplicative work. Tasks were reasonably divided among

25  law firms to ensure avoid replicating work. Kim Decl. ¶ 22; Wand Decl. ¶ 10. Further, tasks were

26  delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their

27  complexity such that the attorneys with higher billing rates billed time only where necessary. Kim Decl.

28

-14-

1  ¶ 22. In addition, Class Counsel's contemporaneous time records were carefully reviewed and de minimis

2  time billed by attorneys and staff was deleted.[7] Kim Decl. ¶ 15.[8]

3        In light of the foregoing, the number of hours that Class Counsel devoted to this case is

4  reasonable. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney

5  should recover a fully compensatory fee.").

6        **E.    Class Counsel's Hourly Rates are Reasonable**

7        The second step is determining the reasonable market value of the attorneys' services at an hourly

8  rate. *See Ketchum v. Moses*, 24 Cal.4th 1122, 1134, 17 P.3d 735, 741 (2001); *Blum v. Stenson*, 465 U.S.

9  886, 895 n.11 (1984). This rule applies even when, as here, the attorneys representing the plaintiff

10 performed the work on a contingent fee basis. *See, e.g., Robertson v. Fleetwood Travel Trailers*, 144 Cal.

11 App. 4th 785, 818, 50 Cal. Rptr. 3d 731, 757-58 (2006); *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).

12 In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is

13 "in line with those prevailing in the community for similar services by lawyers of reasonably comparable

14 skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11; *Gonzalez v. City of Maywood*, 729 F.3d

15 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based

16 on the prevailing market rates in the relevant community."). The relevant community is the community in

17 which the court sits. *See Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

18       Class Counsel's hourly rates are reasonable. Class Counsel are highly regarded members of the

19 bar with extensive expertise in the area of class actions and complex litigation involving consumer claims

20 like those at issue here. Rates are reasonable if they are "within the range of reasonable rates charged by

21 and judicially awarded comparable attorneys for comparable work." *Children's Hosp. and Med. Ctr. v.*

22 *Bonta*, 97 Cal. App. 4th 740, 783, 118 Cal. Rptr. 2d 629, 661-62 (2002). Declarations regarding the

23

24 ───────────────

[7] Class Counsel's lodestar does not include time spent drafting this fee motion. *See In re Wash.*

25 *Public Power Supply Sys.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

26 [8] The detailed time entries attached as Exhibit "1" to the Kim Declaration represent time entries

27 as kept by the firm and before certain time was deleted for purposes of this motion. The summary record attached as Exhibit "2" to the Kim Declaration reflects these deletions.

28

1   prevailing market rate in the relevant community are sufficient to establish a reasonable rate. *See Widrig*

2   *v. Apfel*, 140 F. 3d 1207, 1209 (9th Cir. 1998).

3          Courts have recently and consistently approved the hourly rates of Class Counsel's firms. *See*

4   Kim Decl. ¶ 24; Wand Decl. ¶ 6. The rates requested by Class Counsel are within the range of rates

5   charged by skilled counsel in the Bay Area in similar complex civil litigation and approved by courts in

6   this district and comparable districts. *See* Exh. "3" to Kim Decl.[9]; Wand Decl. ¶¶ 6-9, 12. In addition,

7   rates similar to those of Class Counsel have been approved in a wide range of litigation in this district and

8   other districts in California. *See, e.g.*, *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093,

9   1099-1100 (N.D. Cal. 2010) (finding reasonable market rates in 2010 from $380 to $775 for employment

10   and civil rights attorneys in the Northern District); *In re: Easysaver Rewards Litigation*, 2016 WL

11   4191048, at * 3 (rates ranging from $625 to $750 for partners; $340 to $450 for associates, $125 to $260

12   for paralegals, $575 for of-counsel, and $105 for legal assistants was reasonable).

13          Therefore, Counsel's hourly rates are in line with prevailing market rates and are reasonable.

14   **F.     The Court Should Apply a Modest Multiplier**

15          Once this lodestar figure has been determined, the Court may take into account other

16   "enhancement" factors to adjust the lodestar award. Class Counsel respectfully requests that the Court

17   apply a positive multiplier of approximately 1.3. Courts have approved fee awards resulting in multipliers

18   which are significantly higher than that requested here. This is particularly true where, as here, the

19   Settlement was reached at arm's length through protracted negotiations by experienced counsel, after

20   extensive factual investigation and discovery of the claims and issues, and after taking into consideration

21   the risks presented by protracted litigation.

22

23

---

24   [9] Exhibit "3" is a Declaration from an attorney fee expert, Richard Pearl, submitted in support of

25   a motion for attorneys' fees by Schneider Wallace Cottrell Konecky Wotkyns LLP recently filed
   in *Saravia v. Dynamex Operations West, LLC*, Case No. 3:14-cv-05003-WHA (N.D. Cal.). Some

26   parts of that Declaration relate specifically to the work performed in that case and are not
   applicable here. But the Declaration contains detailed data about attorneys' fees charged and

27   awarded in Northern California, which is applicable here.

28

While Plaintiff seeks only a modest multiplier of 1.3 here, the overall reasonableness of Plaintiff's request is underscored by the fact that a higher multiplier would be justified under applicable law. *See In re TCT-LCD (Flat Panel) Antitrust Litig.*, No, MDL 3:07-MD-1872, 2011 WL 7575003, *1 (N.D. Cal. Dec. 27, 2011) (Approving multiplier of 1.25 as "reasonable" and "well within the ranges approved by the Ninth Circuit and the courts in this district"). Indeed, multipliers normally range from two to four or higher. *See*, *e.g., Vizcaino*, 290 F.3d at 1051 n.6 (affirming 28% fee award where multiplier equaled 3.65 "most" common fund cases apply a multiplier of 1.0-4.0); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. Cal. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Been v. O.K. Industries, Inc.*, No. CIV-02-285, 2011 WL 4478766, at *11 (E.D. Okla. Aug. 16, 2011) (citing a study "reporting [an] average multiplier of 3.89 in survey of 1,120 class action cases" and finding that a multiplier of 2.43 would be "per se reasonable"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher"). Further, the fact that Class Counsel are requesting fees well below the twenty-five percent common fund benchmark (3.5% of the monetary component) should be taken into account in assessing whether the multiplier is reasonable.

Factors considered in determining whether a lodestar multiplier is appropriate generally include: (1) the risks presented by the contingent nature of the case; (2) the result obtained and the importance of the lawsuit to the public; (3) the novelty and difficulty, of the questions involved and the skill requisite to perform the legal service properly; and (4) the preclusion of other employment by the attorney due to acceptance of the case. *See Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1173-75 (C.D. Cal. 2010) (applying California law). All of these factors favor approval of a multiplier along the lines of those approved in the cases above.

### 1.   Risk Presented by Contingent Nature of Recovery

Because Class Counsel undertook representation of this matter on a pure contingency-fee basis, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment. The Ninth Circuit has long recognized that the public

interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over their normal hourly rates" and recognizing that "attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery. Class Counsel expended these resources despite the real risk that they would never receive any compensation. Kim Decl. ¶ 26; Wand Decl. ¶ 12. Class Counsel's "substantial outlay, when there is a risk that that none of it will be recovered, further supports the award of the requested fees" here. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

This action was particularly risky given the various defenses available to Art.com and several unsettled legal issues. Art.com contests liability, as well as the propriety of class certification (absent this Settlement), and it is prepared to oppose certification and to defend against the merits of Plaintiff's claims, if the action is not settled. Art.com's pending motion for summary judgment, if granted, would essentially eviscerate all of Plaintiff's claims and remedies, leaving a class of approximately two million people with nothing. While Plaintiff disagrees with the arguments raised in Art.com's motion for summary judgment, Class Counsel cannot ignore the serious risk that the Court may agree with Art.com. Kim Decl. ¶ 27.

Even if Plaintiff were to prevail at class certification and summary judgment, there was the risk of losing a jury trial. *Id.* ¶ 27. And even if Plaintiff prevailed at trial, any recovery could be delayed for years by an appeal. *Id.* In short, Plaintiff faced real risks in bringing this action, and the Court should

consider these risks in deciding the fee request. *See Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee); *Omnivision*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

### 2.   The Result Obtained

The results obtained in litigation can properly be used to enhance a lodestar calculation where an exceptional effort produced excellent results. *See Hensley*, 461 U.S. at 435; Federal Judicial Center, Manual for Complex Litigation, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).

Here, the settlement fund figure of approximately $20 million represents about 42% of the maximum damage potential that Plaintiff could have been awarded in a class action trial. The fact that the $20 million does not constitute the full measure of possible restitution does not suggest that this is not an excellent recovery for the Class. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" because "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (settlement of only a fraction of potential recovery fair given nature of claims and facts of case).

Moreover, the Court should not ignore the important injunctive relief to the Class and public provided for by the Settlement. One of Plaintiff's primary goals in bringing this case was to put an end to Art.com's allegedly deceptive sales practices. Declaration of James Knapp ("Knapp Decl."), ¶ 7. This Settlement achieves that goal. Where, as here, Plaintiff achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the Court "should consider the value of [such] relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees." *Staton*, 327 F.3d at 974; *Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund").

### 3.   Difficulty of Questions Involved and Skill Required

The "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision,* 559 F. Supp. 2d at 1047 (citation omitted). Class Counsel's skill and expertise, reflected in the efficient and significant Settlement, support the fee request.

Class Counsel are skilled attorneys who have had success in similar class action litigation. Kim Decl. at ¶¶ 4, 6, 29, & Exhibit "4"; Wand Decl. ¶ 4. This case required experienced and competent lawyers and expertise in the issues presented. To obtain such an attorney on the free market, a client must pay the market rate. While most class actions are complex and involve some risk, Class Counsel had to overcome several major obstacles in prosecuting this case, including surviving a motion to dismiss and successfully negotiating with Art.com for discovery while avoiding unnecessary motions practice. This factor militates in favor of the fee request.

### 4.   The Extent to Which Litigation Precluded Other Employment

There are only so many cases that Class Counsel can take at any one time. Consequently, there were other meritorious cases presented to Class Counsel that would have generated fees, but were declined, during the pendency of this action in order to devote the attention necessary to achieve this result. Kim Decl. ¶ 30; Wand Decl. ¶ 12.

### G.   The Percentage of the Fund Cross-Check Supports the Reasonableness of the Fee Request

A common cross-check regarding the reasonableness of a fee award is its percentage of the total value of the benefits conferred on the class. *See Hanlon*, 150 F.3d at 1029. Viewed from a "percentage of fund" perspective, the fee request of $ 683,758 represents less than 3.5% of the monetary value of the settlement. On a percentage basis, Class Counsel's requested fee award is far less than the typical fee often awarded in class actions. *See*, *e.g.*, *In re Mego*, 213 F.3d 457, 463 (9th Cir. 2000) (affirming fee award of one third of common fund); *Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the award exceeds that [25%] benchmark."). In short, Class Counsel's fee request is reasonable and fair under the "percentage of the fund" method.

### H.      Litigation Costs

Class Counsel are entitled to recover the out-of-pocket costs and litigation expenses they reasonably incurred in investigating, prosecuting, and settling this case. *See Staton,* 327 F.3d at 974. These relatively modest out-of-pocket costs were necessary to secure the resolution of this litigation. *See In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1367-72 (N.D. Cal. 1996) (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed). To date, Class Counsel have incurred out-of-pocket costs totaling $61,242. This amount includes costs for (1) mediation fees; (2) travel to the mediation, meetings with counsel, and court hearings; (3) fees paid to expert witnesses; (4) filing and service fees; (5) court reporter fees for depositions; and (6) other costs such as printing, copying, and telephone charges. Kim Decl. 31; Wand Decl. ¶ 14. The largest expenditures were for Plaintiff's experts ($40,800) and the mediator ($10,750).

### I.      The Class Representative Service Award is Reasonable

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action and . . . to recognize their willingness to act as a private attorney general." *Id.* Incentive awards, such as that requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.

The requested service award of $5,000 for Plaintiff is well justified. Plaintiff was willing to lend his name to this matter, thus subjecting himself to public attention, in order to bring this case on behalf of the Class. Knapp Decl. ¶ 6. Plaintiff was also actively engaged in this action. Among other things, Plaintiff provided information to Class Counsel for the complaints and other pleadings, reviewed pleadings and other documents, communicated on a regular basis with counsel and kept himself informed of progress in the litigation and settlement negotiations, reviewed and approved the proposed Settlement,

and prepared and sat for deposition. Knapp Decl. ¶ 4. Plaintiff's dedication was notable, particularly given the relatively modest size of his personal financial stake in this case. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $100,000 incentive award in part on the ground that, "[i]n exchange for his participation, [the plaintiff] will not receive great personal benefit").

Moreover, the Court should consider the overall amount of the service award in the context of the settlement as a whole. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947-48 (approving $5,000 service award to nine class representatives – which represented 0.17% of the settlement fund – because in assessing propriety of service award, courts should focus on the "number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards."). Similarly, the $5,000 service award to the one named plaintiff in this case represents just 0.025% of the total monetary component of the Settlement. Thus, the service award creates no conflict of interest between Plaintiff and the Class. Knapp Decl. ¶ 3. This amount is reasonable and equivalent to amounts frequently awarded to class representatives in other class actions. *See, e.g.*, *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, *27-28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments are reasonable") (citations omitted).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for an award of attorneys' fees in the amount of $683,758, costs in the amount of $61,242, and a service award in the amount of $5,000 to Plaintiff.

DATED:  June 30, 2017                SCHNEIDER WALLACE COTTRELL KONECKY
                                     WOTKYNS LLP


                              By: /s/ Jason H. Kim
                                  JASON H. KIM

                                  *Attorneys for Plaintiff and the Class*