UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PRESCOTT KNAPP,<br><br>    Plaintiff,<br><br>    v.<br><br>ART.COM, INC.,<br><br>    Defendant. | Case No. 3:16-cv-00768-WHO<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 69, 76 |

## INTRODUCTION

Plaintiff James Knapp brought this class action against Art.com alleging violations of consumer protection laws and unlawful business practices related to its advertising and pricing methods. Nine months later, the parties reached an agreement and sought to settle the case on a classwide basis. The agreement includes electronically distributing a $10 "voucher" to class members who have not opted out and injunctive relief consisting of a promise to abide by the law and implement a compliance program for at least four years.

Of the nearly 2 million member class, 452 opted out of the settlement. Fourteen filed objections with the court, one of whom appeared through counsel at the final fairness hearing. Having considered the objections and the arguments of counsel, and although I find that the "vouchers" are coupons under the Class Action Fairness Act (CAFA), for the reasons set forth below I also find that the settlement is fair, reasonable, and adequate, and therefore GRANT final approval. I also GRANT in part the motion for attorney's fees and costs with respect to plaintiff's request for costs and class representative's service award. However, I will defer awarding attorneys' fees because I cannot determine the actual value of the coupon-relief provided by the

settlement.

## BACKGROUND

Art.com owns and operates several e-commerce websites that sell fine art, posters and other home décor products. Settlement Agreement ¶ 4.3 (Kim Decl. ¶ 3, Ex. 1, Dkt. No. 53-1). Plaintiff James Knapp alleges that he bought a framed poster from Art.com, and that he was induced to do so because Art.com advertised a "40% off" sale that expired that day. The next day, it held a new sale at "45% off." *Id.*; *see also* First Am. Compl. ¶¶ 61–62 ("FAC") (Dkt. No. 6). He claims that had he known, he would have waited a day to save an additional 5 percent. *Id.* He asserts that Art.com's advertising practices misled consumers to believe that they were receiving a discount from the item's "regular" price, when in fact the back-to-back sales rendered the "sale" price the "regular" price. *Id.*

Knapp filed his original complaint on February 16, 2016, and his FAC on March 23, 2016. Dkt. Nos. 1, 6. He alleged (1) violations of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, Compl. ¶¶ 77–82; (2) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, *id.* ¶¶ 83–96; (3) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, *id.* ¶¶ 97–106; and (4) unjust enrichment and common law restitution, *id.* ¶¶ 107–112. He sought to represent the following class:

> All natural persons located within the United States who purchased any product online from Art.com through the E-commerce websites, www.art.com, www.posters.com, and/or www.allposters.com, at any time beginning four (4) years prior to the filing of this action on February 16, 2016, and ending at the time this action settles or proceeds to final judgment.

*Id.* ¶ 65.

On June 15, 2016, I granted Art.com's motion to dismiss with respect to Knapp's unlawful prong claim based on section 52(a), but denied it in all other respects. Order Denying Mot. to Dismiss and Strike at 11 (Dkt. No. 31). On October 14, 2016, Knapp filed a motion to certify the class, Dkt. No. 41, and on November 4, 2016, Art.com filed a motion for summary judgment, Dkt. No. 47. Twelve days later the parties notified the court that they had reached a settlement

agreement following a mediation with David Rotman. Dkt. No. 48.

I granted plaintiff's unopposed motion for preliminary approval of the class action settlement on April 26, 2017, Dkt. No. 59, and revised the order on May 19, 2017 to modify implementation dates and the class definition in accordance with a request from the parties, Dkt. Nos. 60 (stipulation), 61 (revised order). I certified the following class for settlement purposes:

> All persons, who between February 12, 2012, to June 9, 2016, purchased any product from Art.com through the e-commerce websites www.art.com, www.posters.com, and/or www.allposters.oom, pursuant to a sale by entering a coupon code, and whose product was shipped to an address in the United States.
>
> Excluded from this definition are the following individuals and/or entities: Art.com and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Art.com has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to any aspect of this litigation, as well as their immediate family members.

Dkt. No. 61, ¶ 4.

The Settlement Agreement provides for electronic distribution of a "voucher" for a single ten dollar ($10) credit that can be used on any product on www.art.com, www.allposters.com, and/or www.posters.com, to any class member who does not opt out. Settlement Agreement ¶ 3.19; ¶ 5.2. Vouchers are valid for eighteen (18) months after issuance, and only one may be used in a single transaction. *Id*. ¶ 3.19. They can be used multiple times until the balance is extinguished. *Id*. They are fully transferable and may be used on sale and/or promotional items, shipping and sales tax. *Id*. They are not redeemable for cash and are not gift cards or gift certificates under California law. *Id*. Class members who do not opt out agree to release any claims arising out of the alleged facts, circumstances, and occurrences underlying the complaint or Art.com's conduct with respect to this action, and to waive any claims under California Civil Code section 1542. *Id*. ¶ 7.3

The Settlement Agreement also provides for injunctive relief whereby Art.com agrees that its advertising and pricing practices will comply with applicable laws. *Id*. ¶ 5.1. And it promises to implement a compliance program, consisting of annual monitoring, training, and auditing, for a

1   period of at least four years. *Id*.

2       In addition, the agreement states that Art.com will pay its own attorneys' fees and costs
3   and all costs incurred in administering the settlement, not to exceed $75,000. *Id*. ¶¶ 5.5, 5.8. And
4   it indicates that the parties have "agreed that an award of attorneys' fees and costs (combined) in
5   the amount of $745,000.00 to Class Counsel is fair and reasonable, in light of the nature and
6   circumstances of the Action." *Id*. ¶ 5.6. And, "[i]n the event that any amount of attorneys' fees
7   and/or costs requested by Class Counsel are not approved by the Court, the Settlement
8   Administrator shall distribute said amount to the National Consumer Law Center." *Id*. It also
9   provides for a $5,000 service award for the plaintiff. *Id*. ¶ 5.7.

10       On May 23, 2017, Heffler Claims Group ("Heffler") created a dedicated website with a
11   summary of the case, a frequently asked questions page, a contact page for claimants to request
12   information, critical dates, and important documents, such as the Settlement Agreement, the Class
13   Notice and briefing associated with preliminary approval and motion for attorneys' fees. Sutor
14   Decl ¶ 7(Dkt. No. 76-1). The next day, Heffler emailed 1,966,194 notices to class members. *Id*. ¶
15   9. Through an iterative process, notice ultimately reached 1,645,846 class members. *Id*. Heffler
16   received 633 requests for exclusion and determined that 452 of these were valid. *Id*. ¶ 10; *see id*,.
17   Ex. D (list of class members who submitted requests for exclusion). The court received a total of
18   fourteen objections. Dkt. Nos. 62, 63, 64, 65, 66, 67, 68, 70, 71, 72, 73, 74, 75, 78.[1] At the final
19   fairness hearing on August 9, 2017, one of the objectors, Timothy Sandefur, appeared thru counsel
20   from the Competitive Enterprise Institute Center for Class Action Fairness. *See* Sandefur
21   Objection (Dkt. No. 74).

**LEGAL STANDARD**

I.   **CLASS ACTION SETTLEMENT APPROVAL**

    Rule 23(e) of the Federal Rules of Civil Procedure requires a court to determine whether a proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine whether a settlement agreement meets these standards, a district court must consider a number of

---

[1] One of the objectors also requested exclusion, Dkt. No. 66, so her objections were not considered. Hoelting Objection and Request for Exclusion (Dkt. No. 66).

factors, including: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting same). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In certain cases, one factor alone may prove determinative in finding sufficient grounds for approval. *See id.*

Settlements that occur before formal class certification require a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court must also ensure that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth,* 654 F.3d at 946-47 (internal quotation marks and citations omitted). Signs of collusion include: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) when the parties negotiate an arrangement under which defendants agree not to oppose an attorneys' fee award up to a certain amount separate from the class's actual recovery, as such arrangements carry "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;" and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947.

While considering all these interests, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute

resolution. This is especially true in complex class action litigation." *Id.*

## II. ATTORNEY'S FEE AWARD

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). In "common fund cases," a court has discretion to award attorneys' fees either as a percentage of such common fund or by using the lodestar method. *Id.* at 967–68. "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon,* 150 F.3d at 1029. Even when applying the percentage method, the court should use the lodestar method as a cross-check to determine the fairness of the fee award. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002).

# DISCUSSION

## I. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Since this settlement occurred prior to class certification, it must rise to a "higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458. The factors articulated in *Churchill* and *Bluetooth* guide the analysis. *See Churchill*, 361 F.3d at 575; *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d at 946.

### A. Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; Risk of Maintaining Class Action Status Throughout the Trial

In determining whether the settlement is fair, reasonable, and adequate, I must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery. *See Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014); *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*

1  *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal
2  quotation marks omitted).
3        Plaintiff acknowledges the "serious challenges" he would face if this litigation were to
4  continue. Mot. for Final Approval at 9 (Dkt. No. 76). Art.com disputed the propriety of class
5  certification, as well as plaintiff's purported entitlement to restitution. *Id.*; *see also* Art.com's
6  Mot. for Summ. J. (Dkt. No. 47)(mooted by settlement). In its summary judgment motion,
7  Art.com relied on *In re Tobacco II*, 240 Cal. App. 4th 779 (Ct. App. 2015), where the California
8  Court of Appeal held that a plaintiff is only entitled to restitution if the product is worth less than
9  the amount paid. Since Knapp admitted that the framed print he purchased on Art.com was worth
10 more than he paid for it,[2] Art.com argues that his claim for restitution fails as a matter of law. *See*
11 *generally* Art.com Mot. for Summ. J. (Dkt. No. 47).
12       Case law suggests that plaintiff would have faced challenges in continuing to litigate. *See,*
13 *e.g.*, *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016)(granting
14 defendant's motion for summary judgment as to claims seeking restitution under the UCL, FAL,
15 and CLRA); *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 7655754 (C.D. Cal. July 27,
16 2016)(referencing the court's denial of plaintiff's motion for class certification). These factors
17 support plaintiff's decision to settle his case.

**B.     Amount Offered in Settlement**

Assessing the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a "particular formula." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[U]ltimately, [it] is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* And, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (quoting another source). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be

---

[2] Knapp stated in his deposition that it "is not his position that the poster is worth less than the [$133.06 he] paid for it." Knapp Dep. at 45:24–46:3 (Keshavarzi Decl., Ex. 1, Dkt. No. 47-1).

7

available to the class members at trial." *Id*.

Plaintiff represents that "the monetary component of the Settlement represents approximately 42% of Plaintiff's total potential recovery at trial."[3] Mot. for Final Approval at 11. He then proceeds to assert that "[i]t is highly unlikely that Plaintiff would be able to advance the full purchase price as measure [sic] of damages, so in reality, the $10 voucher represents substantially more than 42% of the total potential recovery." *Id*. I see at least one problem with plaintiff's 42 percent figure. It is highly unlikely that class members will spend *exactly* $10 if[4] and when they redeem their vouchers. It is significantly more likely that they will either spend more than $10, which raises other concerns because the vouchers will ultimately benefit Art.com, or that they will spend less than $10, in which case they will not amount to the 42 percent figure.[5] Nonetheless, class members who choose to use their voucher have the opportunity to realize a $10 value.

The Settlement Agreement also provides for injunctive relief, so class members that choose to continue doing business with Art.com will benefit from this aspect as well.

The "amount offered" gives class members the opportunity to recover 42 percent of the average total potential recovery, and the injunctive relief benefits those who choose to remain consumers of Art.com. Considering the risks in continued litigation, the amount is fair.

C.  **Extent of Discovery Completed and Stage of Proceedings**

This factor evaluates whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998). Significant investigation and discovery preceded the parties' respective motions, and the plaintiff

---

[3] Class counsel calculated the 42 percent figure based on the following. During the class period the average price for an un-serviced (i.e., non-framed) product was $17, and the average class member made 1.4 purchases, so the average class member spent approximately $23.80. Mot. for Atty Fees at 3. So, according to counsel, "the $10 vouchers represent a recovery of 42% of the value of each Class member's purchase." *Id*.

[4] The "if" question bears on the overall value of the settlement, which, as discussed below, *see* discussion *infra* part II.A, I am unable to determine at this time.

[5] Art.com offers approximately 100,000 items for $10 or less. Takemoto Decl. ¶ 5.

8

1 had retained two experts to support his case. Mot. for Final Approval at 13. The filing of their
2 motions suggests that they "had a clear view of the strengths and weaknesses of their cases."
3 *Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28,
4 2007). At the time of settlement, they had been litigating for nearly nine months and had enough
5 information to make an informed decision. This factor supports settlement.

### D. Experience and Views of Counsel

The Ninth Circuit recognizes that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (internal modifications omitted). "A district court is entitled to give consideration to the opinion of competent counsel that the settlement is fair, reasonable, and adequate." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014) (internal quotation marks and modifications omitted). Class counsel endorsed the settlement as fair, adequate, and reasonable, Kim Decl. ¶ 4, and there is no reason to question that representation.

### E. Presence of a Governmental Participant

There is no governmental participant here. Art.com notified officials of the proposed settlement pursuant to CAFA, Sutor Decl. ¶ 4, and no government entity has raised an objection. The lack of objections favors settlement. *Schuchardt v. Law Office of Rory W. Clark*, 15-cv-01329-JSC, 314 F.R.D. 673, 685 (N.D. Cal. 2016); *Holman v. Experian Info. Sols., Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).

### F. Reaction of Class Members

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Larsen*, 2014 WL 3404531, at *5 (internal quotation marks omitted). "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Id.* (internal quotation marks omitted).

The settlement administrator received valid opt-outs from 452 class members, which amounts to less than .03 percent of the class members who received notice. And the court received a total of 14 objections.[6] "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Rodriguez*, 563 F.3d at 967 (affirming district court's finding that 54 objections out of 376,301 putative class members reflected a favorable reaction).

It is apparent that the "overwhelming majority of the class" had nothing to say about the fairness of the settlement. But I would like to more fully address the objectors' concerns. Some objected to the "minimal" amount offered to class members, especially in comparison to the attorneys' fee award. *See* Dkt. Nos. 62, 63, 73, 74, 75, 76. I discuss the fee award below, and I briefly addressed the "amount offered" above. In addition, some objectors stood on the side of Art.com and argued that it is the consumer's responsibility to compare prices, note sales, and try to get the best deal possible. *See* Dkt. Nos. 64, 66, 70. In some ways, these concerns reflect the strengths and risks in plaintiff's case. As discussed above, they tend to balance each other out and support approval of the settlement.

In addition, many objectors noted that the $10 amount will require them to spend more money with Art.com, thereby rewarding it rather than punishing it. Dkt. Nos. 65, 67, 68, 70, 71, 72, 73, 75, 76. But class members are not *required* to spend more money because they are able to choose from many products that are $10 or less. Takemoto Decl. ¶ 5. As noted above, I do question whether class members will choose to purchase these particular products, and the slim possibility that class members will spend precisely $10. But this uncertainty mostly relates to the overall value of the settlement, which I discuss below in the context of the attorney's fee request. Class members are faced with a choice, whether to use the voucher, and if so, whether to use it without remitting additional money to Art.com. The vouchers create the possibility that Art.com could ultimately benefit financially from this settlement, but it could also lose approximately $16

---

[6] One of these objections is invalid because the objector also opted out. Hoelting Objection and Request for Exclusion (Dkt. No. 66).

10

million in merchandise, if all class members were to use their vouchers without spending additional money. Given the apparent issues with plaintiff's restitutionary model, I find the risk insufficient to render the settlement unfair.

Two objectors also raised concerns with the adequacy of the notice, specifically because it failed to notify class members of the possibility of *cy pres* and the recipient, did not include instructions to serve objections on settlement administrator and failed to accurately convey the scope of the release. Dkt. Nos. 74, 76. "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill,* 361 F.3d at 575. The Notice included appropriate instructions regarding objections and notified class members of the scope of the release. It did, however, fail to notify class members about the possibility of *cy pres*. Because this possibility only exists with respect to attorney's fees and does not impact the class member's recovery, it did not have to be included in the Notice. The Notice "communicated the essentials of the proposed settlement in a sufficiently balanced, accurate, and informative way to satisfy due process concerns." *Rodriguez,* 563 F.3d at 963.

Objector Sandefur also raised separate issues regarding the *cy pres* beneficiary. Dkt. No. 74. He is correct. While the National Consumer Law Center would normally be an acceptable *cy pres* beneficiary, class counsel's firm is co-counsel with NCLC in another matter. *See* Kim Decl. ¶ 13. Accordingly, NCLC is not an appropriate designee. The parties shall amend the settlement agreement to nominate a different *cy pres* beneficiary in the event that the full amount of attorney's fees are not awarded, and notify the court accordingly when they file their motion for attorney's fees after the redemption period has expired, as discussed below.[7]

The remaining arguments of the objectors relate to the attorney's fees and whether this is a coupon settlement under CAFA, both of which I discuss in part II.

G. **Absence of Collusion**

Because this settlement was reached prior to certification of the class, I must examine the

---

[7] Any amendment to the agreement should alter only the *cy pres* designee and should not change the substantive terms approved of by this Order.

11

settlement for evidence of collusion with a higher level of scrutiny. *Bluetooth,* 654 F.3d at 946. In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision" according to which defendants agree not to oppose an attorney's fee award up to a certain amount; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund. *Id.* at 947.

The potential for two of the three signs of collusion exists here. First, the parties do not dispute the presence of a clear sailing provision. Second, I cannot determine whether the attorney's fee award represents a disproportionate amount of the settlement until I know the true value of the settlement. This factor is part of the reason I am deferring ruling on the motion for attorneys' fees. While any funds not awarded to class counsel will not revert to the defendant, they will go to a *cy pres* beneficiary rather than the class. On the other hand, the settlement was the result of arm's length negotiations during a full-day mediation with an experienced mediator. My decision to label this a coupon settlement under CAFA and determine attorney's fees accordingly, discussed below, resolves potential issues here.

In sum, the *Churchill* factors support final approval, and the *Bluetooth* factors do not indicate collusion. I find the settlement fair, reasonable, and adequate, and GRANT final approval.

## II.    MOTION FOR ATTORNEYS' FEES

Next, I must decide whether the requested attorneys' fees and costs, and service award are fair and reasonable. Plaintiff requests an award of $745,000 for class counsel to cover fees and costs, and a $5,000 service award. Mot. for Attorneys' Fees and Costs and Class Representative Service Award at 1–2 (Dkt. No. 69).

### A.    Attorneys' Fees

Plaintiff seeks an attorneys' fee award of $683,758, based on counsel's lodestar plus a

multiplier of 1.3. Memo. ISO Attorneys' Fees and Costs and Class Representative Service Award at 1 ("Fees Mot.")(Dkt. No. 69-1). He maintains that the total monetary value of the settlement is approximately $20 million, and this is not a coupon settlement under CAFA. *Id*. at 1, 4–10. He further argues that California state law must govern the attorneys' fee award in this CAFA diversity jurisdiction action with California state law claims.[8] *Id*. at 10.

### 1. Relevancy of CAFA's coupon settlement section (28 U.S.C. § 1712)

Plaintiff argues that whether the vouchers are coupons is irrelevant to his fee request because "no part of Plaintiff's fee request is 'attributable to the award of coupons.'" Fees Mot. at 4 (quoting 28 U.S.C. § 1712(a)). Rather, it is "based on the lodestar method with a modest multiplier of 1.3." *Id*. But plaintiff's argument was foreclosed by the Ninth Circuit in *In re HP Inkjet Printer Litigation*:

> Of course, one might argue that the fees award in this hypothetical case [a settlement that only provides for coupon relief] is "attributable to" the work of class counsel on the action, rather than the coupons. But one would be mistaken. Attorney's fees are *never* "attributable to" an attorney's work on the action. They are "attributable to" the relief obtained for the class.

716 F.3d 1173, 1182 (9th Cir. 2013); *see also id*. ("Because it is the class relief that is *both* a necessary and a sufficient condition to an award of attorney's fees, it follows that an attorney's fees award can only be "attributable to," or the consequence of, the class relief, not the attorney's hard work.").

Plaintiff, however, is correct that section 1712(a) does not apply here because the class relief includes injunctive relief. *See* Fees Mot. at 4. But before I answer the question of whether section 1712(b) or (c) dictates the appropriate method for calculating plaintiff's fees, I must first address the *applicability* of the statute, *i.e.*, whether the vouchers here are coupons.

### 2. The "vouchers" are coupons

Once plaintiff moves past his relevancy argument, he insists that "this is not a coupon settlement because the Vouchers in this case constitute substantial value to each Class member."

---

[8] I do not address this last argument. Plaintiff did not mention it during the hearing, and I find it meritless.

13

Fees Mot. at 5. He likens this case to *In re Online DVD-Rental Antitrust Litig.*, in which the Ninth Circuit affirmed the district court's finding that the $12 Walmart gift cards were not "coupons" under CAFA. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015) ("CAFA's legislative history, along with the decisions of district courts that have considered the issue, convince us that these gift cards are not coupons."). The *In re Online DVD* court reasoned that the gift cards were not coupons because:

> These discounts [disfavored settlement coupons] require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services. The gift cards in this case are different. Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his or her own money and can choose from a large number of potential items to purchase. Even if the gift card is only worth $12, it gives class members considerably more flexibility than any of the coupon settlements listed in the Senate report.

*Id*. at 951.

The "vouchers" here fall somewhere between the *In re Online DVD* gift cards and a discount coupon with little or no value. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1179 (9th Cir. 2013)("Unlike a cash settlement, coupon settlements involve variables that make their value difficult to appraise, such as redemption rates and restrictions. For instance, a coupon settlement is likely to provide less value to class members if, like here, the coupons are non-transferable, expire soon after their issuance, and cannot be aggregated."). The vouchers are clearly not gift cards. The Settlement Agreement makes this distinction clear. *See* Settlement Agreement § 3.19 ("Vouchers are not gift cards or gift certificates under California law or otherwise and cannot be used to purchase gift cards."). Plus, they are only valid for 18 months, and only one voucher can be used per transaction.

But they also are not merely "discounts" that "*require* class members to hand over more of their own money before they can take advantage of the coupon." *In re Online DVD*, 779 F.3d at 951 (emphasis added). They "provide Class members with the ability to choose from thousands of products from Art.com without spending any of their own money." Fees Mot. at 7. Class

members may choose from thousands of products, but Art.com's offerings are not equivalent to "a large number of products from a large retailer." *Id*.; *see id.* ("Like the gift cards to Rite Aid in *Reibstein,* part of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different *types* of products.")(emphasis added). Unlike a Walmart gift card where recipients could purchase necessities such as toilet paper or toothpaste, class members here will be forced to purchase a product that they otherwise may not have purchased. This also triggers the policy concerns that defendants in coupon settlements are not forced to "disgorge … ill-gotten gains" and often benefit from coupons because customers are lured back to spend more money. The *In re Online DVD* court explicitly acknowledged two salient points. First, it noted that "Walmart sells many products beyond DVDs [the subject of the lawsuit, so] class members have less reason to be wary of a gift card to the defendant retailer[.]" *Id*. at 952. Second, "the claimants [there] had the option of obtaining cash instead of a gift card, undercutting the argument that the settlement forces them to buy from the defendant." *Id*. Neither aspect is present here, so the policy concerns persist.

All in all, this is a close case. It is true that class members have the ability to purchase a large number of products without being forced to hand over more of their own money. But it is also true that it is impossible to know the true value of the settlement until the actual redemption rate is known. *See In re HP Inkjet Printer Litig.*, 716 F.3d at 1186 n.17 ("If § 1712(a) means anything, it means that Congress has determined that the best way to appraise the size of the benefit class members receive from a coupon settlement is to calculate the redemption value of the coupons."). Without knowing the true value of the settlement, I cannot determine whether the fee request is "reasonable in relation to the results obtained." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 944 (quoting another source).

### 3.     Fees Calculation in Mixed Coupon Settlements

Given "Congress's clear intention to tie class counsels' compensation to that of the class," *id*. at 1186, the most prudent course of action is to defer awarding fees until the true value of the

15

settlement is known by incorporating the actual redemption rate of the vouchers.[9] *In re HP Inkjet Printer Litig.*, 716 F.3d at 1184 ("If a settlement gives coupon and equitable relief and the district court sets attorneys' fees based on the value of the entire settlement, and not solely on the basis of injunctive relief, then the district court must use the value of the coupons redeemed when determining the value of the coupons part of the settlement."); *id*. at 1186 n.19 ("[A] fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery.").

In mixed coupon settlements,

> [T]he district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained. This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the end, the total amount of fees awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b).

At this point, I cannot determine the actual value of the coupons awarded. Once the redemption rate of the vouchers is known, I will be better equipped to approximate the true value of the settlement, and I can perform a cross-check to test the reasonableness of the attorneys' fee request.

### B. Costs and Service Award

Class counsel may recover reasonable costs. Fed. R. Civ. P. 23(h); *see also, Vincent v. Reser*, No. 11-cv-03572-CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) ("Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class."). Class counsel state that they have incurred costs totaling $61,242, including "(1) mediation fees; (2) travel to mediation, meetings with counsel, and court hearings; (3) fees paid to expert witnesses; (4) filing and service fees; (5) court reporter fees for depositions; and (6) other

---

[9] The alternative is to award fees based on the lodestar method, but only for counsels' work obtaining *non-coupon* relief. 716 F.3d at 1185 (""[L]odestar fees may only be awarded in exchange for obtaining *non-coupon* relief."). To do otherwise in mixed coupon settlements, is an abuse of discretion. *See id*. at 1186 ("[T]he district court abused its discretion where it made a rough estimate of the ultimate value of this settlement, and then awarded fees in exchange for obtaining coupon relief without considering the redemption value of the coupons.").

16

costs such as printing, copying, and telephone charges." Memo. ISO Attorneys' Fees at 21; *see* Kim Decl. ¶ 31 (Dkt. No. 69-2); *id.*, Ex. 5 (Dkt. No. 69-7); Wand Decl. ¶ 14 (Dkt. No. 69-8). The largest expenses were $40,800 for plaintiff's experts, and $10,750 for the mediator. Memo ISO Attorneys' Fees at 21.

I find that these costs are reasonable and GRANT plaintiff's motion with respect to his request for $61,242 to compensate for expenses.

Plaintiff also moves for a class representative service award of $5,000 as compensation for his time and effort, including communicating with class counsel, providing a declaration, appearing for deposition, and assisting with other discovery. He estimates he dedicated approximately 28 hours towards this case. Knapp Decl. ¶ 4 (Dkt. No. 69-10).

I find that this request is reasonable and GRANT plaintiff's motion with respect to the service award. *See, e.g.*, *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *27-28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments are reasonable") (citations omitted).

## CONCLUSION

In accordance with the foregoing, I find that this settlement fair, adequate, and reasonable, and GRANT plaintiff's motion for final approval. With respect to the motion for attorneys' fees, I GRANT the request for costs and service award. I defer ruling on the remainder of the motion and will DENY it without prejudice for administrative convenience. Once the redemption period is completed, plaintiffs shall file a new motion for fees stating the actual value of the coupons received by the class and proposing a new *cy pres* beneficiary.

**IT IS SO ORDERED.**

Dated: August 22, 2017

William H. Orrick
United States District Judge

17